## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW CHRISTENSEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:23-CV-136 HEA |
| | ) | |
| LOUISVILLE LADDER, INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Louisville Ladder, Inc.'s ("Louisville Ladder" or Defendant") motion to exclude the opinions of Plaintiffs' disclosed expert, Frank Burg. (ECF No. 58). Plaintiffs oppose the motion, which is fully briefed and ready for disposition. Defendant also filed a Motion for Summary Judgment, which likewise is fully briefed and ripe for review. (ECF No. 55). For the following reasons, Defendant's Motion to Exclude Opinion Testimony from Frank Burg will be granted. Defendant's Motion for Summary Judgment will also be granted.

### I.    Background

Plaintiff Andrew Christensen alleges that he was injured while working at Plaintiff Jessica Lawrence's home using an aluminum stepladder, Model W-2112-065 (the "Ladder"), which was manufactured by Defendant. Plaintiff Lawrence purchased the ladder from Walmart, Inc. ("Walmart"). The Complaint alleges that

Plaintiff Christensen was standing on the fourth rung of the Ladder doing repairs when the first rung of the Ladder collapsed into itself and caused the Ladder to topple.  Plaintiff Christensen fell from the ladder and suffered physical injuries, including a fractured hand that required surgery.  The Complaint alleges that the Ladder "suffers from a manifest design or manufacturing defect that caused the metal first rung to fail, and bend and twist onto itself."  (ECF No. 1 at 4).

In the Complaint, Plaintiff Christensen brings the following counts against Louisville Ladder: strict products liability – manufacturing defect (Count I); strict products liability – design defect (Count II).  He brings the following counts against Louisville Ladder and Walmart: strict products liability – defect due to nonconformance with representations, (Count III); strict products liability – failure to warn, (Count IV); negligence (Cout V); breach of express warranty, (Count VI); breach of implied warranty, (Count VII); negligent misrepresentations, (Count VIII); fraudulent misrepresentations, (Count IX); and punitive damages (Count X). Plaintiff Lawrence brings the following claims against Louisville Ladder and Walmart: violation of Missouri Merchandising Practices Act ("MMPA"), (Count XI); breach of express warranty, (Count XII); and breach of implied warranty (Count

XIII).[1]  For relief, Plaintiffs seek money damages, injunctive relief, punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

Plaintiffs voluntarily dismissed their claims against Walmart.  (ECF No. 36). In an Opinion, Memorandum, and Order dated March 28, 2024, the Court granted Louisville Ladder's Motion to Dismiss and dismissed Counts XI, XII, and XIII. (ECF No. 39).  Therefore, Plaintiff Christensen and Defendant Louisville Ladder are the remaining parties in this suit, and the remaining claims are Count I-X.

Following discovery, Louisville Ladder filed the motions presently before the Court.  Louisville Ladder moves to exclude the testimony of Plaintiff Christensen's expert, Frank Burg, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),.  Louisville Ladder also moves for the entry of summary judgment as to all remaining claims pending against it.

## II.    *Motion to Exclude Expert Testimony*

The Court will first address the Defendant's Motion to Exclude Opinion Testimony.  During discovery in this case, Plaintiff Christensen disclosed Frank Burg as an expert.  Defendant moves to exclude Mr. Burg from testifying as an expert entirely.  Defendant argues, among other things, that Mr. Burg should be

---

[1]Plaintiff Lawrence initially brought suit on behalf of her and those similarly situated.  She sought to represent consumers who were allegedly misled into purchasing Defendants' ladders under false representations that the products were safe for use.  Plaintiff Lawrence's claims were not certified as a class action.

excluded because he is not qualified to render an opinion on a manufacturing defect. Defendant also argues that his opinions have insufficient factual foundation, are not founded in proper methodology, and only provide bottom-line conclusions without sufficient support.  Defendant further argues that his testimony should be excluded because he has disclosed a preliminary report only.

The parties have submitted an extensive evidentiary record, which includes deposition transcripts, expert reports, and other exhibits.  The Court finds that it can make a proper *Daubert* determination without the need for an evidentiary hearing or oral argument.  *Miller v. Baker Implement Co.*, 439 F.3d 407, 412 (8th Cir. 2006) (district court need not hold a *Daubert* hearing where parties have opportunity to present argument and evidence before ruling on the motion).

### A.    *Legal Standard*

Federal Rule of Evidence 702 governs the admission of expert testimony in federal court.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).  The proponent of the expert testimony in question, here Plaintiff Christensen, has the burden to prove its admissibility by a preponderance of the evidence.  *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021).  *See also* Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("expert testimony may not be admitted unless the proponent demonstrates to the

4

court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.") (citing Fed. R. Evid. 104(a)).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)   the testimony is based on sufficient facts or data;

    (c)   the testimony is the product of reliable principles and methods; and

    (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.

District courts are "vested with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Union Pac. R. Co. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015) (quoting *Daubert*, 509 U.S. at 589). In order to carry out this gatekeeping function, the Court must ensure that proposed expert testimony meets three prerequisites in order to be admissible. First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. In other words, the evidence must be relevant. *Lauzon*, 270 F.3d at 686 (citing 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[3] (2001)). Second, "the proposed witness must be qualified to

5

assist the finder of fact." *Id.* Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id. See also Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010); *Khoury v. Philips Med. Sys.*, 614 F.3d 888 (8th Cir. 2010). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (quotation omitted). According to the Eighth Circuit Court of Appeals, Rule 702 favors admissibility of expert testimony if it assists the factfinder in understanding an issue of fact. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014).

### B.   Discussion

Defendant moves to exclude the opinions of Frank Burg, who is a registered professional safety engineer with Accident Prevention Corporation. Plaintiff Christensen disclosed an expert report from Mr. Burg dated January 27, 2025, which Mr. Burg characterized as "preliminary." (ECF No. 59, Ex. 4 at 1). Mr. Burg outlines the following opinions in his report:

> The "catastrophic" failure of the right leg and first step was caused by a defective connection between the first ladder tread and siderail. "I can find no other possible cause of this failure other than a construction defect."

> "Had the damage to the ladder been from the ladder falling and/or Mr. Christensen losing his balance, there would be

> significant evidence on the ladder of a point of contact which caused this damage."
>
> Plaintiff Christensen used the ladder in a proper manner, but even if the ladder fell over, "it would not account for such signification [sic] damage shown in the photographs."
>
> Louisville Ladder "violated numerous standards for ladder safety including OSHA and ANSI as well as, the customs and practices within the industry when they failed to provide a ladder without structural defects."

(ECF No. 59, Ex. 4, 1-3).  Mr. Burg concludes his report by writing that Plaintiff Christensen's injuries were "caused by a structural failure of the Louisville Ladder. There is no indication that Mr. Christensen did anything that would cause the catastrophic failure seen in the photographs." (*Id.* at 5).  No other report from Mr. Burg was produced.

The Court will first address the preliminary nature of the expert report and Mr. Burg's qualifications.  Mr. Burg characterized his report as preliminary, and at his deposition, he testified that his opinions were not final.  He further admitted during his deposition that he added a statement to the report that he normally does not, reserving the right to have the Ladder examined further and potentially change his opinions because he "wrote [the] report with very limited information."  (ECF No. 59, Ex. Ex. 4 at 32:1–33:3).  He also stated that should this case go to trial, he would want to have the Ladder tested and obtain testimony from a metallurgist or structural engineer.

7

Plaintiff Christensen responds that Mr. Burg characterized his report as preliminary due to the evolving nature of litigation, and that Defendant has had a chance to take Mr. Burg's deposition and, therefore, any error in disclosure was harmless. But Plaintiff Christensen does not address Mr. Burg's own acknowledgement that he is not qualified to offer an opinion that that the Ladder was defective without additional experts.

Mr. Burg's opinions are based upon his years of experience within the safety profession. He is an expert in the field of safety and accident prevention, but he is not an expert in design or metallurgy. Defendant contends that he is unqualified, as he admitted in his deposition, to offer the opinion that he the accident was caused by a construction defect in the ladder. Plaintiff Christensen responds that an expert is not confined to his area of practice, rather an expert may testify concerning "related applications," and Mr. Burg is qualified to testify that the Ladder was defective. (EFC No. 62 at 3) (citing *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals*, Inc., 254 F.3d 706, 715 (8th Cir. 2001)).2

Under Eighth Circuit law, the "area of the witness's competence [must] match the subject matter of the witness's testimony." *Shipp v. Murphy*, 9 F.4th 694, 701

---

2 In Plaintiff's Memorandum in Opposition, attorney Michael C. Seamands quotes *Wheeling Pittsburgh Steel Corporation v. Beelman River Terminals*, Inc., 254 F.3d 706, 715 (8th Circ. 2001), as follows: "An expert is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization affects the weight of the testimony, not its admissibility." (ECF No. 62 at 3). This language is not found anywhere in *Wheeling Pittsburgh Steel Corporation*, and the Court did not find the quotation in any other case on Westlaw.

(8th Cir. 2021).  *See also Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (holding Rule 702 requires that "the area of the witness's competence matches the subject matter of the witness's testimony.").   The case Plaintiff Christensen cites in his response is instructive on the issue.  In *Wheeling Pittsburgh Steel Corporation*, the defendant proffered the testimony of an "eminently qualified" hydrologist to testify about flooding in a warehouse.  254 F.3d at 715.  The Eighth Circuit found it was reversible error for the district court to have allowed the expert, who had a doctoral degree, to testify beyond the scope of his expertise, and that the inadmissible opinions expressed by him prejudiced plaintiff in that he offered opinion testimony outside of his area of expertise on ultimate issues of fact that the jury was required to answer.  In its analysis, the Eighth Circuit noted that the hydrologist lacked the education, employment, or other practical personal experiences to testify as an expert specifically regarding safe warehousing practices. *Id.  See also Kennedy v. Baxter Healthcare Corp.*, 348 F.3d 1073, 1074–75 (8th Cir. 2003) (per curiam) (affirming the district court's exclusion of an expert, who was not a physician or toxicologist, from opining as to "what makes a rubber glove safe or unsafe for allergy purposes or what level of proteins or allergens are necessary to achieve a safe level for allergy purposes").

Mr. Burg is a qualified expert in safety practices and hazard prevention, but he is not a design expert or metallurgist.  He lacks the education, training, and

9

experience to offer an opinion that there was a construction defect in the Ladder that caused the accident. *See Kennedy*, 348 F.3d at 1074–75; Wheeling Pittsburgh Steel Corp., 254 F.3d at 715.

The Court also finds that in forming his opinions, Mr. Burg did not employ a proper methodology, and the opinions lack sufficient support. *Weisgram v. Marley Company,* 169 F.3d 514 (8th Cir. 1999), is particularly instructive on this issue. In *Weisgram,* a fire investigator testified at trial that heat trapped in a baseboard heater had ignited a house fire. The expert, however, never visited the house and conducted no tests to bolster his theory, and instead, he drew his conclusions from the observations of others and photographs. *Id.* at 519. He testified that there was no other explanation because everything else had been ruled out. The Eighth Circuit found that it was reversible error for the district court to have allowed this expert to testify because his opinion was unreliable, as there was insufficient foundation for his testimony, and it was based on "rank speculation." *Id.* at 520.

Like the expert in *Weisgram*, Mr. Burg did not visit the scene of the accident. He did not perform any testing or complete his own investigation. In fact, he did not even inspect the Ladder. Instead, he talked to Plaintiff Christensen and relied on materials provided to him. In other words, Mr. Burg's opinions that the Ladder had a construction defect and the defect caused Plaintiff Christensen's injuries are based on photographs and interviews. And like the expert in *Weisgram*, Mr. Burg reached

the conclusion that the Ladder had a construction defect not through testing or a scientific methodology, but through the process of elimination.  Mr. Burg credited Plaintiff Christensen's version of the facts concerning how he was using the Ladder – although as Defendant points out, there is a discrepancy between the facts Mr. Burg relied on and Plaintiff Christensen's deposition testimony – and he found that the Ladder was being used in a proper manner, and because there is no other explanation for the accident, he concludes that the ladder must be structurally defective.

Mr. Burg did not apply a methodology, and he fails to provide any explanation of the analysis he used in forming his opinions that the Ladder had a construction defect, and the defect caused the Ladder to collapse, other than to state that there is no other possible cause.  In short, there is nothing within his report that relies upon any specific method or scientific principles that would be otherwise unavailable to the trier of fact.  Mr. Burg is being offered to give the opinions that the damage to the Ladder was not merely from a fall, but rather that the Ladder collapsed, and the collapse was caused by a construction defect.  Mr. Burg is not qualified to offer these opinions, and the opinions lack sufficient foundation to establish reliability under Rule 702.  Defendant's motion to exclude Frank Burg as an expert witness is granted.

The Court now turns to Defendant's Motion for Summary Judgment.

### III.  Motion for Summary Judgment

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).  Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

With this standard in mind, the Court finds the following facts as true for purposes of deciding Defendant's Motion for Summary Judgment.

### B.    Facts

On June 2, 2019, Jessica Lawrence purchased from Walmart an aluminum stepladder, model W-2112-06S, (the "Ladder") that Louisville Ladder had designed and manufactured.  On April 28, 2020, Plaintiff Christensen used the Ladder to install mesh at Ms. Lawrence's house to keep birds from gathering on the tops of the horizontal beams under her carport roof.  While working on this project, Plaintiff Christensen fell from the Ladder.

Plaintiff Christensen testified that he had measured and pre-cut mesh into sections to seal off the underside of the carport.  He was using a handheld staple gun

13

to install the mesh and scissors to remove excess mesh.  He testified that he was working for approximately two hours – going up and down the ladder at least 25 times – before the Ladder suddenly collapsed.  The Ladder was situated on a concrete pad of the carport.  At the time of the fall, Plaintiff Christensen recalls that his left leg was on the third step, his right leg on the fourth step, and he was beginning to descend the Ladder.  As he started to move his right foot, the next thing he knew he was on the ground.  Plaintiff Christensen could not confirm that he had his hands on the Ladder at the time he fell.  Plaintiff Christensen fractured his right hand in the fall, and he had surgery as a result of the fracture.

The Ladder was visibly damaged after the fall.  The right, front siderail was bent inward below the first (bottom) step, and there was an inward bend in the left front siderail below the bottom step.  The right siderail was significantly more bent than the left.  The first step was bent upward on the right side, and there was flange and brace bending.

Dr. Eric Knox, of Engineering Systems Inc. ("ESi"), performed an analysis of the Ladder and the damage.  The Ladder was inspected and representatives of ESi visited the site and interviewed Plaintiff Christensen.  ESi also performed tests on an exemplar ladder of the same model.  Dr. Knox did not find any evidence that the Ladder was defective in its manufacture.  He concluded that the damage to the Ladder was not the cause of the accident but, instead, was the result of dynamic

impact forces of Plaintiff Christensen falling on the Ladder after it was already tipped over.  In other words, the damage pattern observed is consistent with Plaintiff Christensen tipping the ladder over and causing the damage during his fall, not from any product defect.  "The subject ladder did not 'collapse' as alleged. The post-incident damage seen in the subject ladder was the result of the subject incident, not the cause. This opinion is consistent with the physical evidence, available incident information, medical records, and the laws of physics, and further supported by [Plaintiff Christensen]'s successful use of the subject ladder, climbing up and down the ladder, for 2 hours prior to the incident, during which time he would have been placing similar loads on the ladder without any damage or 'collapse' occurring." (ECF No. 64 at 12).

### C.    Discussion

In its motion, Defendant moves for the entry of summary judgment as to all remaining claims against it.  Plaintiff Christensen filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment in which he stated, Plaintiff "do[es] not argue that there are allegations or facts in the record to support Counts II, III, IV, V, VI, VIII, IX, and X."  (ECF No. 63 at 3).  In other words, Plaintiff Christensen concedes Defendant is entitled to the entry of summary judgment as to these counts.  The only remaining counts, therefore, are Count I,

Strict Products Liability – Manufacturing Defect, and Count VII, Breach of Implied Warranty.

## 1.  Strict Products Liability – Manufacturing Defect

In Count I, Plaintiff Christensen brings a claim for strict products liability.  In a strict product liability claim, a manufacturer's liability is based on "the condition or character of the product and not the character of the defendant's conduct." *Nesselrode v. Exec. Beechcraft, Inc.*, 707 S.W.2d 371, 375 (Mo. 1986) (citing *Blevins v. Cushman Motors*, 551 S.W.2d 602, 608 (Mo. 1977)).  The Missouri Supreme Court adopted section 402A of the Restatement (Second) of Torts, which imposes strict liability on manufacturers for selling "any product in a defective condition unreasonably dangerous to the user or consumer" that results in injury to the user or consumer.  *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969) (quoting Restatement (Second) of Torts § 402A).  *See also* Mo. Rev. Stat. § 537.760.  Strict product liability is further divided into liability for defective design and liability for a manufacturing defect.  *Blevins*, 551 S.W.2d at 608 (design defect); *Keener*, 445 S.W.2d at 364 (defect in the manufacturing process).  "[A] manufacturing defect occurs when something goes wrong in the manufacturing process and the product is not in its intended condition.  The product is evaluated against the producers' own standards, and compared to like products." *Richcreek v. Gen. Motors Corp.*, 908 S.W.2d 772, 776 (Mo. Ct. App. 1995) (quotations and

citations omitted). In a design-defect case, "there is no doubt that the product is in the condition intended by the manufacturer. [Instead,] the defect lies in a consciously chosen design." (*Id.*)

Plaintiff Christensen has abandoned his design-defect claim, and he is pursuing a strict liability claim for manufacturing defect only. To recover under a theory of strict liability for a defective product, Plaintiff Christensen must prove the following elements: (1) Defendant sold the Ladder in the course of its business; (2) that Ladder was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use; (3) the Ladder was used in a manner reasonably anticipated; and (4) Plaintiff was damaged as a direct result of the defective condition that existed when the Ladder was sold. *Keener*, 445 S.W.2d at 364; *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 505 (Mo. Ct. App. 2007), *opinion adopted and reinstated after retransfer* (Oct. 6, 2008), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013). *See also* Mo. Approved Jury Instr. (Civil) 25.04 (8th ed.). Plaintiff Christensen must present evidence to support each element of his claim. *Bone v. Ames Taping Tool Sys., Inc.*, 179 F.3d 1080, 1081 (8th Cir. 1999); *Strong*, 261 S.W.3d at 505.

Defendant argues that Plaintiff Christensen has failed to provide evidence to support his allegations that the Ladder had a manufacturing defect and that the defect caused his injury. The Court agrees that there is no admissible evidence establishing

that there was a manufacturing defect in the ladder, that is, that something went wrong with the manufacturing process or that the Ladder did not meet Defendant's own standards for the product.    There is also no admissible evidence that a manufacturing defect caused Plaintiff Christensen's injuries.    Plaintiff's expert, Frank Burg, did opine that there was a "structural defect" in the Ladder that caused the Ladder to collapse, but as discussed above, Mr. Burg is not qualified to make such opinions, and they lack sufficient foundation.

Plaintiff Christensen responds with two arguments.    First, he argues that he need not come forward with specific evidence of a product failure or malfunction. In support of this argument, Plaintiff Christensen cites to *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 446 (8th Cir. 2008).    In *Sappington,* the Eighth Circuit cited to a case from the Missouri Court of Appeals and wrote "a plaintiff has no burden to prove a product failure or malfunction." 512 F.3d at 446 (citing *Stinson v. E.I. DuPont De Nemours & Co.*, 904 S.W.2d 428, 431 (Mo. Ct. App. 1995)).    But *Sappington* was a design defect case, and the Missouri Court of Appeals case that the court cited, was also a design defect case.    Further, the court in *Stinson* qualified its pronouncement and stated that in a design defect case, a plaintiff need not establish product failure or malfunction, but he must show that the product as designed was unreasonably dangerous.    904 S.W.2d at 431.    These two cases are not applicable, because Plaintiff Christensen is not pursuing a design defect claim.    Plaintiff must come forward with

18

evidence of a manufacturing defect – that is, that the Ladder was built incorrectly or did not meet Defendant's specifications – and evidence that this defect caused his injuries. *Richcreek*, 908 S.W.2d at 776.

Second, Plaintiff Christensen argues that under Missouri law, a jury may infer causation and the existence of a product defect based on circumstantial evidence "under *a re-ipsa*-type theory." (ECF No. 63 at 4). But as Defendant points out, Plaintiffs did not plead a *res ipsa* theory of liability in the Complaint. Under controlling Eighth Circuit law, a plaintiff cannot recover under a *res ipsa* theory where the plaintiff has alleged a specific theory of liability, and *res ipsa loquitur* was not pleaded in the complaint.[3] *Dunn v. Nexgrill Indus., Inc.*, 636 F.3d 1049, 1058 (8th Cir. 2011); *England v. Downey*, 589 F.2d 374, 377 n. 5 (8th Cir. 1979).

Even if Plaintiff Christensen could bring a *res-ipsa*-type claim without pleading it, he has failed to establish that he could offer sufficient evidence to prove a manufacturing defect through circumstantial evidence. "To prove a product liability claim by inference from circumstantial evidence without proof of a specific defect, a plaintiff must offer evidence that (1) tends to eliminate other possible causes of the injury or property damage, (2) demonstrates that the product was in the same basic condition at the time of the occurrence as when it left the hands of the

---

[3] *Res ipsa loquitur* loosely translates to "the thing speaks for itself." Black's Law Dictionary (12th ed. 2024). It is a doctrine that is "applicable only when the plaintiff does not know the cause of the accident." *Dunn*, 636 F.3d at 1058.

defendants, and (3) the injury or damages is of a type that normally would not have occurred in the absence of a defect in the product." *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1258 (8th Cir. 2006). "The elements a plaintiff must prove to infer a product defect from circumstantial evidence are intended to ensure the jury's verdict is free from speculation." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 458–59 (8th Cir. 2012). They "'amount to an assessment of the strength of the circumstantial evidence.'" *Id.* The Eighth Circuit "ha[s] enforced these limitations where the circumstantial evidence is not strong enough to free the jury's verdict from the realm of conjecture." *Id.* (quoting *Hickerson*, 470 F.3d at 1259) *See also Ruminer v. Gen. Motors Corp.*, 483 F.3d 561, 565 (8th Cir. 2007) (holding circumstantial evidence did not allow the jury to determine failure of a car seatbelt system was caused by product defect); *Martin v. E-Z Mart Stores, Inc.*, 464 F.3d 827, 830–31 (8th Cir. 2006) (holding circumstantial evidence was insufficient to allow the jury to infer a defect in a cigarette lighter). The issue before the Court is whether the circumstantial evidence in the record, viewed in a light most favorable to Plaintiff, "is strong enough to allow the jury to infer, without resort[ing] to speculation," that the Ladder had a manufacturing defect that the time it left Defendant's control, and it caused Plaintiff Christensen to fall and sustain injuries. *Russell*, 702 F.3d at 459.

20

The only admissible, circumstantial evidence that Plaintiff Christensen points to in support of his *res ispa* theory is his own testimony that he was beginning to descend the Ladder when it suddenly collapsed.  Plaintiff Christensen contends this evidence is enough, and he cites to two cases from the Eighth Circuit that he claims support his contention that he can prove the Ladder had a manufacturing defect that caused his injuries through this circumstantial evidence: *Russell v. Whirlpool Corp.*, 702 F.3d 450 (8th Cir. 2012); and *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252 (8th Cir. 2006).

Both *Hickerson* and *Russell* involved house fires, and in both cases the plaintiffs were allowed to present evidence from fire investigators, who had pinpointed the origins of the fires to locations near the products at issue.  In these cases, there was other circumstantial evidence as well. In *Russell*, the fire investigator testified that the refrigerator at issue was burned more significantly than other appliances, and burn-marks indicated that it was likely the source of the fire. 706 F.3d at 459.  Further the power was tripped on the refrigerator and not the other appliances, and there was also evidence that fire had burned completely through a compressor panel in the refrigerator, while other panels did not have the same damage.  *Id.*  In *Hickerson,* the fire investigator presented evidence that the fire had started in a certain area in the living room, and the only powered appliance in the area was the powered wheelchair.  470 F.3d at 1260.  The expert eliminated other

21

sources in the room, including a space heater that was not plugged in and the home's wiring. *Id.* In both of these cases, the Eighth Circuit found the circumstantial evidence was enough to survive summary judgment because in each case, expert testimony established a point of origin for the fire, and the circumstantial evidence tended to show the source of ignition, and a jury would not need to speculate to infer the cause of the fire and that there was a product defect. *Russell*, 702 F.3d at 459; *Hickerson*, 470 F.3d 1252. This case stands separate and apart from both those cases. Plaintiff Christensen does not have an expert who can offer testimony about how the Ladder could have collapsed on itself.

Instead, the Court finds that the case at bar is nearly identical to *Crawford v. Sears Roebuck & Co.*, 295 F.3d 884 (8th Cir. 2002). In *Crawford*, a man sustained serious injuries when he fell from a ladder. He and his wife sued the retailer on a theory of strict product liability, claiming that the ladder was sold with a manufacturing defect or a design defect. *Id.* at 885. Although Arkansas law applied to the case, the plaintiffs were required to establish the same elements, namely that the ladder was defective, and the defect caused the plaintiff's injury. *Id.*

The plaintiffs produced eyewitness testimony that the ladder had buckled when the husband was standing on it. They also offered the deposition of an expert witness, who opined that the ladder was defective because it would not otherwise have buckled in the manner that it did. Like here, the expert was unable to identify

22

the alleged defect with any specificity. *Id.* The district court excluded the expert and granted summary judgment in the defendant's favor, because there was no proof that the retailer sold the ladder in a defective condition. *Id.*

On appeal, the Eighth Circuit affirmed the lower court's decision and wrote, "The fact that an accident occurred is not proof that the ladder was defective when [the defendant] sold it, and the expert's testimony that the ladder was defective is a mere speculative conclusion." *Id.* The court concluded that the mere fact that a ladder buckled under a normal load "is not enough to establish that it was defectively designed or that it was sold in a defective condition." *Id.*

*Crawford* is illustrative and luminescent. This court finds that there is insufficient evidence in this case to establish the Ladder had a manufacturing defect and the defect caused Plaintiff Christensen's injuries. Defendant is entitled to summary judgment as to Count I, Strict Products Liability – Manufacturing Defect.

## 2. Count VII, Breach of Implied Warranty.

In Count VII, Plaintiff Christensen alleges that Defendant breached an implied warranty. He alleges Defendant "knew of the use for which the Ladder was intended and impliedly warranted the product to be of merchantable quality and safe for such use and that its design, manufacture, labeling, and marketing complied with all applicable industry, federal and state requirements." (ECF No. 1 at 13). Plaintiff Christensen further alleges that he relied on Defendant's implied warranty that the

23

Ladder was safe for its intended use, but contrary to the implied warranty, the Ladder was defective and not safe for its intended use.

In Missouri, in order to prove a claim for breach of implied warranty of merchantability, a plaintiff must establish: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011). "Most importantly, a plaintiff must prove that he or she was injured by the defective nature of the goods." *Id.* (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 130 (Mo. 2010) and *Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989)). Defendant argues that Plaintiff Christensen cannot establish that the Ladder was defective. As discussed above, the Court agrees.

In his response, Plaintiff Christensen points to the fact that the label on the Ladder stated that it was rated for 250 pounds, and he weighed approximately 225 pounds at the time of his fall. He argues that the Ladder did not conform to Defendant's representation that the Ladder would hold 250 pounds, and Defendant has not presented any definitive evidence that the Ladder was merchantable when sold.

First, it is Plaintiff Christensen's burden, not Defendant's, to come forward with evidence showing that the Ladder was defective.  Second, Plaintiff Christensen has failed to come forward with any evidence that the Ladder could not hold 250 pounds, such as an expert's opinion or testing.  The fact that Plaintiff Christensen weighed less than 250 pounds and he fell does not establish that the Ladder could not hold 250 pounds.  Plaintiff Christensen is attempting to rely on a *res-ispa*-type theory to prove his claim, but he cites no authority in support of the use of *res ispa loquitor* for establishing a claim for breach of implied warranty under Missouri law, and the Court has found none.  Furthermore, even if *res ispa loquitor* applied to a claim for breach of implied warranty, the circumstantial evidence in this case does not establish that the Ladder was defective for the reasons stated above.  Because Plaintiff Christensen has failed to come forward with evidence that the Ladder was defective and that he was injured by the defect, the Court finds Defendant is entitled to the entry of summary judgment on Count VII, Breach of Implied Warranty.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Louisville Ladder, Inc.'s Motion to Exclude Opinion Testimony from Frank Burg is **GRANTED.**  [ECF No. 58]

**IT IS FURTHER ORDERED** that Defendant Louisville Ladder, Inc.'s Motion for Summary Judgment is **GRANTED.**  [ECF No. 55].

An appropriate Judgment and Dismissal shall accompany this Opinion, Memorandum, and Order.

Dated this 5th day of September, 2025.

_____
      HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE